**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

KELLY BUTLER, Personal       *
Representative of the Estate of Marie
Peterson,       *

           *

          Plaintiff,       *     Civil Action No. 8:22-2711-AAQ

           *

          v.       *

           *

WASHINGTON METROPOLITAN       *
AREA TRANSIT AUTHORITY,
           *

          Defendant.       ******

## MEMORANDUM OPINION AND ORDER

In this personal injury case, Marie Peterson alleged that she fell and sustained injuries when a Washington Metropolitan Area Transit Authority (WMATA) bus came to a sudden stop. Ms. Peterson has since passed away from causes unrelated to the incident at issue in this case. Her son and personal representative of her estate, Kelly Butler, is the current Plaintiff in this action. Pending before the Court is Defendant WMATA's Motion for Summary Judgment. ECF No. 44. Though Plaintiff opposes the Motion, he has failed to present any admissible evidence in support of his position. Defendant's Motion has been fully briefed, and a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons discussed below, Defendant's Motion shall be granted.

**BACKGROUND**

I.      **Factual Background**

Plaintiff and Defendant disagree as to the events giving rise to this case.  According to Plaintiff, Marie Peterson was riding home on a WMATA bus on September 19, 2018.  ECF No. 45-27, at 5.  As the bus approached her stop, Ms. Peterson stood up from her seat and waited near the exit door.  *Id*.  Without warning, the bus came to a sudden stop and simultaneously opened the front exit door.  *Id*.  This caused Ms. Peterson "to lose her footing, stumble, and fall out of the exit door."  ECF No. 45-3, at 1.  The WMATA bus driver offered no assistance and drove away.  ECF Nos. 42, at 2; 45-1, at 4.  As a result of her fall, Ms. Peterson allegedly injured her back, left shoulder, left hip, and left leg.  ECF Nos. 42, at 2; 45-20, at 7.  After the incident, Ms. Peterson sought treatment from her primary care provider and attended physical therapy to address neck pain, back pain, and hip pain.  ECF Nos. 45-1, at 4; 45-20, at 7.  Defendant, for its part, denies that the incident occurred.  ECF No. 45-28, at 3.

The following facts are largely undisputed.  On September 24, 2018, five days after the alleged incident, Ms. Peterson gave a recorded statement, which Defendant refers to as the "customer complaint," to April Rice, a WMATA employee who works in Risk Management. ECF Nos. 45-27, at 6; 44-1, at 3.  During her call with Ms. Rice, Ms. Peterson offered identifying information—such as her name, address, date of birth, social security number, occupation, and Metro Access Card Number—and gave a detailed account of the alleged incident.  ECF No. 45-27, at 6-7.  After Ms. Peterson's complaint, WMATA's Office of Risk Management conducted an internal investigation into the incident, though no incident report was created.  ECF No. 45-22, at 6, 17.  The investigation yielded no reports, video, claims by other passengers, or other

information related to the incident.    ECF No. 45-22, at 3, 17.    Plaintiff, however, maintains that "video should exist."    ECF Nos. 45-1, at 1.

Ms. Peterson passed away on April 7, 2021, from causes unrelated to this incident.    ECF Nos. 44-3, at 1; 45-2, at 2.

## II.    Procedural History

Ms. Peterson, the original Plaintiff in this action, initially filed her Complaint in Prince George's County District Court alleging negligence and seeking $15,000 in damages.    ECF No. 4, at 3.    After filing the Complaint, the Summons was reissued and renewed three times before Plaintiff finally served Defendant on September 27, 2022.    ECF No. 24, at 2-3.    On October 20, 2022, Defendant removed the case to this Court, ECF No. 1, at 1-2, and filed an Answer denying liability, ECF No. 3.

Though Ms. Peterson passed away in April of 2021—before her Complaint was served on Defendant—Defendant did not learn of this fact until March 1, 2023, when attempting to schedule her deposition.    ECF No. 45-12, at 12-13.    Defendant subsequently filed a Suggestion of Death on March 3, 2023.    ECF No. 18.    Plaintiff then filed a Motion to Strike the Suggestion of Death and, in the alternative, moved to substitute Kelly Butler—Ms. Peterson's son and personal representative to her estate—as Plaintiff.    ECF No. 21.    Defendant responded in Opposition to Plaintiff's Motions and included a Motion to Dismiss.    ECF No. 23.    This Court denied Plaintiff's Motion to Strike and Defendant's Motion to Dismiss and ordered Plaintiff to execute a new Motion to Substitute Party compliant with the Federal Rules of Civil Procedure.    ECF No. 25.    Once Plaintiff did so, ECF No. 26, this Court granted Plaintiff's Motion to Substitute Party and substituted Kelly Butler as Plaintiff, ECF No. 27.

On December 14, 2023, the parties proposed, and the Court adopted, a Scheduling Order that set the close of discovery for September 27, 2024.  ECF Nos. 34, 35.  On that day, the parties filed a Joint Status Report stating that discovery had been completed.  ECF No. 36.  However, later that day, Plaintiff served Defendant with new discovery responses that, for the first time, identified Plaintiff Kelly Butler as a witness and altered the factual allegations regarding Ms. Peterson's alleged fall.  ECF No. 37.  In response, Defendant sought to conduct limited discovery related to the new information Plaintiff offered.  *Id.*  Plaintiff opposed extending discovery. ECF No. 39.  Following a discovery conference held to address the dispute, Defendant was given time to depose Plaintiff and identify a witness in response to Plaintiff's new factual allegations. ECF No. 41.  The Court gave Plaintiff time to identify any rebuttal witnesses and extended the dispositive motions deadline by sixty days.  *Id.*

On December 19, 2024, Plaintiff—with Defendant's consent—filed an Amended Complaint.  ECF No. 42.  While Plaintiff's initial negligence claim alleged that the bus doors closed on Ms. Peterson as she was exiting the bus, thereby pushing her from the bus and onto the sidewalk, ECF No. 4, at 2, the Amended Complaint alleges that the bus driver came to a forceful stop and simultaneously opened the doors, causing Ms. Peterson to fall out of the bus, ECF No. 42, at 2.  Additionally, the Amended Complaint increased Plaintiff's damages demand from $15,000 to $75,000.  *See* ECF Nos. 4, at 3; 42, at 3.  Defendant answered the Amended Complaint on December 31, 2024, again denying Plaintiff's allegations and liability.  ECF No. 43.

Defendant filed its Motion for Summary Judgment on January 23, 2025.  ECF No. 44. Plaintiff filed his Response in Opposition on February 7, 2025, ECF No. 45, to which Defendant replied on February 20, 2025, ECF No. 46.

**STANDARD OF REVIEW**

The Court will grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court must deny the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(a); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the nonmoving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998). "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim." *Scott v. United States*, No. 06-cv-2777, 2007 WL 3020185, at *1 (D. Md. Feb. 23, 2007). Such factual support must go beyond "conclusory statements with no evidentiary basis." *Manokey v. Reliable Contracting Co., Inc.*, No. 23-cv-1161, 2025 WL 660061, at *3 (D. Md. Feb. 28, 2025) (quoting *Alston v. Astrue*, No. 10-cv-3446, 2012 WL 665982, at *4 (D. Md. Feb. 28, 2012), aff'd, 474 Fed. Appx.). Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256–57. While the nonmoving party's

evidence "need not be in a form that would be admissible at trial" to be considered on summary judgment, *Celotex.*, 477 U.S. at 324, the party must be capable of "reduc[ing]" the evidence into an admissible form, *U.S. Dept. of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgt. of Va., Inc.*, 64 F.3d 920, 926 n.8 (4th Cir. 1995). *See also Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 139 (D. Md. 2019) ("[E]xhibits need not be in admissible form to be considered at summary judgment, provided they could be put in admissible form.").

## ANALYSIS

Defendant moves for summary judgment on the basis that Plaintiff has no admissible evidence to support his negligence claim. ECF No. 44-1, at 2-6. To establish a claim of negligence in Maryland, a plaintiff generally must prove: "(1) defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual loss or injury; and (4) the loss or injury proximately resulted from the defendant's breach of the duty." *Butts v. Washington Metro. Area Transit Auth.*, No. 17-cv-00855, 2018 WL 4616017, at \*2 (D. Md. Sept. 26, 2018) (citing *Todd v. Mass Transit Admin.*, 373 Md. 149, 155 (2003)).

As a matter of public policy, Maryland courts have developed specific requirements for negligence claims against motor carriers, such as WMATA, arising from a sudden start or stop: "[w]hen a passenger files a negligence claim against a motor carrier for injuries received when the carrier makes a sudden start or stop, the passenger must prove that the movement was unusual or extraordinary." *Washington Metro. Area Transit Auth. v. Djan*, 979 A.2d 194, 197 (Md. Spec. App. 2009). A plaintiff cannot prove "unusual or extraordinary" movement simply through "adjectival descriptions of the nature of the stop," but must also demonstrate that the movement created some "definite, factual incident." *Comm'r of Motor Vehicles v. Balt. & Annapolis R.R.*

*Co.*, 263 A.2d 592, 594 (1970) (citing *Retkowsky v. Balt. Transit Co.*, 160 A.2d 791, 793 (1960)).

Thus, a plaintiff must offer evidence of the bus movement itself as well as of some consequence

of that movement.   A plaintiff might satisfy this burden by presenting, among other things,

"evidence that any passengers exclaimed at the [movement]," or "that any baggage fell over or fell

off a rack," *Djan*, 979 A.2d at 198; testimony from corroborating witnesses, *see Butts*, 2018 WL

4616017, at *4; or a plaintiff's own descriptions of how the movement affected him or her, *see*

*Mansaray v. Washington Metro. Area Transit Auth.*, No. 13-cv-902, 2014 WL 2094044, at *3 (D.

Md. May 19, 2014) ("[T]his court notes, in some instances, the Maryland courts have found a

plaintiff's descriptions of how an allegedly sudden and forceful movement affected her constitutes

some definite, factual incident.").

### I.      Plaintiff's Evidence Regarding the WMATA Bus's Movement

Defendant argues that Plaintiff has no admissible evidence regarding the movement of the

WMATA bus.   ECF No. 44-1, at 6.   Plaintiff disputes[1] Defendant's claim and, without reference

to the record, identifies the following as evidence in support of his claim that the movement of the

WMATA bus was unusual or extraordinary: 1) the customer complaint audio recording between

Ms. Peterson and Ms. Rice; 2) the fact that Plaintiff Kelly Butler can attest that Ms. Peterson was

involved in the incident; 3) Ms. Peterson's medical treatment following the occurrence; and 4) the

---

[1] Defendant argues that the Court should not consider Plaintiff's Opposition because Plaintiff filed it one day late.   ECF No. 46, at 1.   It is within the Court's discretion to consider an untimely-filed opposition.   *Sama v. Turning Point, Inc.*, No. 22-cv-02344, 2024 WL 112030, at *3 (D. Md. Jan. 10, 2024).   Because Plaintiff filed his Opposition just one day late and this Court prefers to decide matters on the merits, the Court will, in its discretion, consider Plaintiff's Opposition.   *See Jennings v. Hous. Auth. of Baltimore City*, 13-cv-2164, 2015 WL 1085574, at *4 (D. Md. Mar. 10, 2015) (quoting *Curtis v. Evans*, No. 2003-cv-2774, 2004 WL 1175227, at *1 (D. Md. May 27, 2004)) ("Local Rule 105.2(a) requires that 'all memoranda in opposition to a motion shall be filed within fourteen days of the service of the motion.' . . . However, 'Local Rule 105.2(a) does not provide the consequence for a failure to meet the prescribed deadline.   Thus, the district court, in its discretion, may decide whether to consider an untimely opposition.'").

WMATA bus driver's recollection of the occurrence and Ms. Peterson's statement afterwards. ECF No. 45-1, at 3.

### A. The Audio Recording Between Ms. Peterson and Ms. Rice

Plaintiff argues that the customer complaint audio recording of the September 24, 2018, conversation between Ms. Peterson and Ms. Rice supports his claim that the WMATA bus's movement was unusual or extraordinary.  ECF No. 45-1, at 3.  Defendant counters that the recording is inadmissible hearsay.  ECF No. 44-1, at 3.  Plaintiff does not argue that the recording is not hearsay, but rather claims that it is admissible because Plaintiff, Ms. Peterson's son, can authenticate the recording.  ECF No. 45-3, at 5.

As an initial matter, Plaintiff has not included the audio recording or a transcript thereof in the record, nor has he identified specific statements made therein that support his contention that the bus's movement was unusual or extraordinary.   As such, the question of whether the recording itself, or the statements contained therein, can be considered on summary judgment is immaterial, as the Court cannot consider evidence not before it.  *Vales v. Preciado*, No. 05-cv-3110, 2012 WL 115425, at *1 (D. Md. Jan. 13, 2012) ("In summary judgment the parties submit materials which create a record; it is on that record only, that the Court rules on summary judgment.").   However, because both parties have briefed the admissibility of the recording and Plaintiff repeatedly relies on information allegedly contained in the recording, the Court will assess its admissibility.

Hearsay encompasses all statements "made by an out-of-court declarant offered to prove the truth of the matter asserted."  *United States v. Rich*, No. 21-cr-0432, 2024 WL 2396706, at *2 (D. Md. May 23, 2024) (citing Fed. R. Evid. 801(c)).  Generally, "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."  *Lyons v. City of Alexandria*, 35 F.4th 285, 290 n.4 (4th Cir. 2022) (quoting *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)).  *See also E.E.O.C. v. Denny's, Inc.*, No. 06-cv-

2527, 2010 WL 2817109 (D. Md. July 16, 2010) ("[T]he Court may consider evidence on summary judgment that would be admissible at trial . . . all documents and other physical evidence must be properly authenticated and either non-hearsay or within a recognized exception").  This rule, however, is not "unfailingly rigid," and courts have considered hearsay evidence at the summary judgment stage when a party could clearly "reduce" the materials into admissible evidence at trial. *Cost Control Mktg. & Sales Mgt. of Va., Inc.*, 64 F.3d at 926 n.8.  *See also Acosta v. WH Administrators, Inc.*, 449 F. Supp. 3d 506, 518 n.2 (D. Md. 2020) (considering hearsay declarations at summary judgment when each declarant attested that they would come to trial and testify to the facts stipulated in their declarations).

Ms. Peterson's statements in the audio recording between her and Ms. Rice—made five days after the alleged incident—are hearsay and cannot be considered at the summary judgment stage.  The statements were made out of court, and Plaintiff plans to use the recorded audio of them—which allegedly contains Ms. Peterson's description of the incident[2]—to prove the truth of the matter asserted therein.  Because the statements are hearsay, they must fall into an exception or exemption outlined in the Federal Rules of Evidence to be considered on summary judgment. *See Denny's, Inc.*, 2010 WL 2817109, at *3.  Alternatively, it must be clear that Plaintiff could present the content in an admissible form at trial.  *Cost Control Mktg. & Sales Mgt. of Va., Inc.*, 64 F.3d at 926 n.8.  Plaintiff does not argue that the recorded statements fall within a hearsay exception, and the Court is aware of none that apply.  To the extent that Plaintiff claims that Ms. Peterson's statements are admissible because he can authenticate the recording, ECF No. 45-3, at 5, Plaintiff's argument is incomplete: the statements must be both authenticated and either non-

---

[2] As noted, because Plaintiff has not provided the Court with a copy of the audio recording or a transcript thereof, the Court does not know what information is contained in the recording beyond a "detailed statement about the occurrence," and identifying information, ECF No. 45-27, at 6-7.

hearsay or within a recognized exception. *See Denny's, Inc.*, 2010 WL 2817109, at *3.

Additionally, because Ms. Peterson is unable to testify, it is not clear how Plaintiff would present

the information contained within the recording in an admissible, non-hearsay form at trial. *C.f.*

*Acosta*, 449 F. Supp. 3d at 518 n.2 (considering hearsay at summary judgment when it was clear

plaintiff could present the content in an admissible, non-hearsay form at trial through declarant

testimony). Accordingly, the Court cannot consider the contents of the customer complaint audio

recording at the summary judgment stage.

### B. Plaintiff Kelly Butler's Account of the Incident

Plaintiff states that he "ha[s] knowledge" of the incident, ECF No. 45-27, at 5, and "can

attest that Ms. Marie Peterson was involved in a WMATA Bus Incident that caused her personal

injuries." ECF No. 45-1, at 3. Plaintiff further alleges that his ability to "attest" to the incident

serves as evidence that the movement of the bus was unusual or extraordinary. *Id.* Defendant,

citing Plaintiff's deposition, argues that Plaintiff "has no admissible evidence about the incident."

ECF No. 44-3, at 2.

The only evidence Plaintiff provides regarding his knowledge of the incident is contained

in Plaintiff's own supplemental interrogatory answers.[3] ECF Nos. 45-2, at 11-12; 45-27, at 5. In

his answer, Plaintiff attests that Ms. Peterson was on a WMATA bus when "[s]uddenly, without

warning, the bus driver simultaneously opened the bus doors, hit the brakes hard and caused Ms.

Peterson to fall out of the bus." ECF Nos. 45-2, at 11; 45-27, at 5. Defendant argues that

Plaintiff's response to the interrogatory is inadmissible, as Plaintiff testified at his deposition that

he was not present at the scene, has no first-hand knowledge of the incident, and learned about the

---

[3] While Plaintiff has also included his own affidavit as an exhibit to his Opposition, the affidavit discusses only his ability to recognize his mother's voice in the customer complaint audio recording. ECF No. 45-29.

incident for the first time from Ms. Peterson one or two weeks after it occurred.   ECF Nos. 46-1, at 29; 44-7, at 3-4.

Plaintiff's interrogatory answer is based on inadmissible hearsay that cannot be made admissible at trial.   "A party's interrogatory answers, as with other forms of evidence, must still be admissible under the Federal Rules of Evidence," *Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 621-622 (D. Md. 2001), aff'd, 30 Fed. Appx. 117 (4th Cir. 2002) (unpublished), or capable of being made admissible, *Sanchez Carrera*, 402 F. Supp. 3d at 139.   Here, Plaintiff's interrogatory answer relies on hearsay statements from Ms. Peterson.   In fact, in his discovery dispute briefing, which Plaintiff includes as an exhibit to his Opposition, ECF No. 45-18, at 3, Plaintiff specifically informed the Court that the information contained in this supplemental interrogatory response— which reflected a change in the factual allegations surrounding Ms. Peterson's fall, *see* ECF Nos. 45-20, at 5; 45-27, at 5—was obtained from the customer complaint audio recording.   As with the recording itself, because Ms. Peterson is unable to testify at trial, it is not clear that Plaintiff could present the information in this interrogatory answer in an admissible form.   Thus, the Court cannot consider the interrogatory answer at the summary judgment stage.

Plaintiff's account of the incident in his interrogatory response is further inappropriate for consideration at the summary judgment stage because, as Defendant points out, it is not based on personal knowledge.   Generally, courts in the Fourth Circuit have found that when a non-corporate party relies on his or her own interrogatory answers when opposing a motion for summary judgment, such answers must be based on personal knowledge.   *See, e.g.*, *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 269 n.1 (4th Cir. 2015) (finding the district court properly excluded interrogatory answers that were based on hearsay rather than personal knowledge); *Burwick v. Pilkerton*, 700 Fed. Appx. 214, 216 (4th Cir. 2017) (unpublished) ("[A]nswers to

interrogatories used to oppose a motion for summary judgment must be made on personal knowledge.") (internal quotation marks and citation omitted); *Ambling Mgt. Co. v. Univeristy View Partners, LLC*, 581 F. Supp. 2d 706, 720 (D. Md. 2008) ("For interrogatory answers to be considered on summary judgment, they must satisfy the personal knowledge requirement of Federal Rule of Civil Procedure 56(e)."); *Planmatics, Inc.*, 137 F. Supp. 2d at 622-623 (finding that when a nonmoving party relies on her own interrogatory answers when opposing a motion for summary judgment, such answers should satisfy the Rule 56(e) personal knowledge requirement); *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 807 (D. Md. 2001) (finding that when nonmoving plaintiff relied on his own interrogatory answers to oppose a summary judgment motion, his answers lacked probative force because they were not based on personal knowledge). *But see Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (holding that, as pertaining to a corporate party, answers to interrogatories need not be based on personal knowledge).   Defendant has established that Plaintiff lacks personal knowledge of the occurrence: Plaintiff testified at his deposition that he was not at the scene and did not witness the incident. ECF No. 44-7, at 3.   Because Plaintiff's account of the incident contained in his interrogatory response is based on a review of the hearsay statements in the customer complaint audio recording rather than personal knowledge, the Court cannot consider the interrogatory answer at the summary judgment stage.

### C.  Ms. Peterson's Medical Treatment

Plaintiff argues that the fact that "Ms. Peterson sought medical treatment for her injuries immediately after the occurrence" is evidence that the WMATA bus's movement was unusual or extraordinary.   ECF No. 45-1, at 3.   Here, Plaintiff again relies solely on his own interrogatory responses.   In his responses, Plaintiff, citing to Ms. Peterson's medical records, asserts that "Ms.

Peterson sought treatment from physical therapy and primary care [providers] regarding neck pain, back pain and hip pain," and "was diagnosed with cervical strain, lumbosacral strain, left leg strain, left hip strain, a contusion to her left lower extremity, and suffered occasional headaches as a result of the occurrence." ECF Nos. 45-2, at 8; 45-20, at 7. Though Plaintiff cites to Ms. Peterson's medical records in his interrogatory responses and claims that he provided the records to Defendant, ECF No. 45-20, at 7, Plaintiff has not provided the records to the Court. Defendant argues that "Plaintiff did not present any evidence as to [Ms.] Peterson seeking medical treatment," ECF No. 46, at 8, and that "Plaintiff—Mr. Butler (who signed the interrogatory answers)—is not qualified to render opinions as to causation and medical damages to Ms. Peterson," ECF No. 46-1, at 19.

Plaintiff's conclusory allegations that Ms. Peterson sought treatment for injuries the incident caused are insufficient to support his claim that the WMATA bus's movement was unusual or extraordinary. Plaintiff has produced no evidence beyond his own unsupported interrogatory responses to support his contention that Ms. Peterson sought medical treatment for injuries the incident caused. Plaintiff offers no medical records, depositions, or affidavits to factually support his claims. Conclusory statements with no evidentiary backing cannot defeat a motion for summary judgment, *Manokey*, 2025 WL 660061, at *3.

Further, Plaintiff's interrogatory responses rely on information obtained from Ms. Peterson's medical records, not Plaintiff's personal knowledge. *See* ECF No. 45-20, at 7. As discussed above, when a party relies on his own interrogatory responses to oppose a motion for summary judgment, his responses must be based on personal knowledge. *See supra* Part I(B). Had Plaintiff submitted the medical records themselves, the Court could have considered the records directly. However, because Plaintiff's interrogatory responses regarding Ms. Peterson's

medical care are neither based on personal knowledge nor supported by any factual evidence in the record, the Court cannot consider the answers, nor the information contained therein, at the summary judgment stage.

### D.  Potential Testimony of WMATA's Bus Driver

Plaintiff's reliance on the potential testimony of the bus's driver is similarly unpersuasive. Plaintiff asserts that "WMATA's employee bus driver Ishamel Banguara witnessed" and "ha[s] knowledge of the occurrence," and thus would be able to provide testimony detailing it.  ECF Nos. 45-1, at 2; 45-27, at 5-6.  However, there is no evidence in the record reflecting Mr. Banguara's knowledge or account of the incident.  For example, Plaintiff has not produced an affidavit or deposition testimony from Mr. Banguara.  The Court cannot consider evidence not before it, *see Vales*, 2012 WL 115425, at *1, and the record is devoid of evidence from Mr. Banguara supporting any of Plaintiff's allegations, including his claim that the WMATA bus's movement was unusual or extraordinary.

Plaintiff further claims that Ms. Peterson said "What are you trying to do? Kill me?" to Mr. Banguara immediately following the incident, evidencing that the bus's movement was unusual or extraordinary.  ECF No. 45-1, at 3.  However, there is no evidence before the Court that Ms. Peterson made such a statement.  The statement is referenced only in Plaintiff's Opposition briefing without any citation to evidence in the record.  *Id.*  Accordingly, Ms. Peterson's alleged statement to Mr. Banguara does not support Plaintiff's claim that the bus's movement was unusual or extraordinary.

**II.    Plaintiff Cannot Show That the Bus's Movement Was Unusual or Extraordinary**

To establish "unusual or extraordinary" movement, a plaintiff must put forth some evidence of a vehicle's movement and its consequences.  *See Djan*, 979 A.2d at 197-98.  As summarized by this Court in *Butts v. Washington Metropolitan Area Transit Authority*:

> Factual scenarios in which a Maryland court has found a definite, factual incident that was sent to a jury include: (1) "rocking, swaying, or jiggling of the streetcar that threw the other passengers back and forth"; (2) "[the plaintiff fell] flat on her back from a standing position, with such force that the driver said he heard her hit the floor"; and (3) "such a violent jerk that it caused the passengers to scream."

2018 WL 4616017, at *4 (quoting *Djan*, 979 A.2d at 197).  While the list above may not be exhaustive, a plaintiff must advance some evidence supporting their contention that the movement of the bus was unusual or extraordinary.

Plaintiff has failed to provide the Court with any admissible evidence supporting such. Accordingly, Plaintiff's negligence claim fails as a matter of law.[4]  *See, e.g.*, *Lopez v. Washington Metro. Area Transit Auth.*, No. 15-cv-4008, 2016 WL 6962868, at *6 (D. Md. Nov. 29, 2016) (quoting *Miller v. Mass Transit Admin.*, 306 A.2d 261, 264 (1973)) (noting that, in cases like this one, "the issue of negligence cannot be submitted to the jury unless there is evidence to show that the injury was caused by an unusual, extraordinary, or abnormal [movement].").  Had Plaintiff supported his case with any admissible evidence—for instance, Ms. Peterson's medical records or an affidavit from Mr. Banguara—perhaps, a different result would be appropriate.  "The standard

---

[4] Plaintiff argues that Defendant's negligence is a question of fact to be determined by a jury.  *See* ECF No. 45-3, at 2.  While this is generally true, summary judgment is appropriate where the nonmoving party has failed to present "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). Here, Plaintiff has submitted no admissible evidence in support of his negligence claim; thus, a reasonable jury could not return a verdict in his favor.  *See id.*  Accordingly, summary judgment is appropriate.

is not high, but it requires some evidence." *Rouse v. Washington Metro. Area Transit Auth.*, No. 22-cv-03088, 2024 WL 473806, at *4 (D. Md. Feb. 6, 2024). Plaintiff has provided no such evidence; Defendant is, therefore, entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment shall be GRANTED. The Clerk's Office shall close the case.

So ordered.

Date: April 4, 2025                                     _____/s/_____
                                                                 Ajmel A. Quereshi
                                                                 United States Magistrate Judge